UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

RETAIL SERVICE SYSTEMS, INC.,

    Plaintiff,

v.

MATTRESS BY APPOINTMENT, LLC, et al.,

    Defendants.

Case No. 2:15-cv-2769
CHIEF JUDGE EDMUND A. SARGUS, JR.
Magistrate Judge Elizabeth P. Deavers

## OPINION AND ORDER

This matter is before the Court on Defendants' Motion to Dismiss for Lack of Personal Jurisdiction. (ECF No. 4.) For the reasons that follow, Defendants' Motion is **DENIED IN PART** and **GRANTED IN PART**.

### I.

Plaintiff, Retail Service Systems, Inc. ("RSS"), is an Ohio corporation based in Dublin, Ohio. RSS operates a retail mattress and furniture business through which it licenses and franchises a proprietary marketing system to dealers across throughout the country. (Compl. ¶¶ 1, 6; ECF No. 1.) RSS purchased the intellectual-property rights to its particular marketing system in June 2013 through an asset purchase agreement with Power Marketing Direct, Inc. ("PMD"). (*Id.* ¶¶ 12–13.) According to RSS in the Complaint,

> Over the course of several years, [PMD] developed a unique and comprehensive marketing program that they applied to the mattress and furniture industry. PMD licensed and/or franchised "dealers" to purchase mattresses and furniture exclusively through PMD, where over 55% of PMD's sales were in mattresses. Further, PMD trained these dealers to market and sell those products through unique, non-traditional, retail-type stores using the PMD proprietary marketing, merchandising, and selling program that had been developed by PMD over time, utilizing PMD's extensive marketing and sales experience.
>
> . . . [The] proprietary program involves a unique by-appointment-only business with a much higher success rate than a typical retail start-up business. It combines

scripted, low-cost advertising techniques; scripted and planned telephone conversations; and in-person merchandising and selling methodologies for selling mattresses and furniture by appointment. [The] program also includes a step-by-step trackable management process for measuring and developing licensed and/or franchised dealers.

(*Id.* ¶¶ 12, 14.)

Defendant, Mattress By Appointment, LLC ("MBA (FL) II")[1], is a Florida limited liability company with its principle place of business in Jacksonville, Florida. (*Id.* ¶ 7.) Defendant Mattress By Appointment, LLC ("MBA (SC)") is a South Carolina limited liability company. (*Id.* ¶ 8.) Defendant C. Edwin Shoffner is a South Carolina citizen and the sole owner and operator of MBA (FL) II and MBA (SC). (*Id.* ¶ 9.) MBA (FL) II sells and markets mattresses through a network of independent dealers to customers through one-on-one appointments. Shoffner avers that MBA (SC) is a non-operational company that "conducts no business, whatsoever, in any state, has no checking account, is not funded, and has no assets." (Defs.' Mem. in Support of Mot. to Dismiss ("Mot. to Dismiss") at 4, citing Shoffner Aff. ¶ 7; ECF Nos. 4, 4-1.)

From approximately 2000 to 2003, Darren Conrad worked for PMD as a dealer and manager in Columbus, Ohio. (Pl.'s Mem. in Opp. To Mot. to Dismiss ("Pl.'s Mem.") at 2; ECF 8.) Conrad left PMD in 2003 to start his own business in South Carolina named Carolina Bedding and Furniture, Inc., which "operated using the exact same methodologies as PMD." (Compl. ¶ 19; ECF No. 1.) Prior to his departure from PMD, Conrad signed a Separation Agreement that included a three-year noncompete clause. (*Id.* ¶ 17.) Upon discovery of Conrad's competing business, PMD sued Conrad in Ohio state court in 2004 and was granted a

---

[1] Another company by the same name "Mattress By Appointment, LLC" was previously registered in Florida by Shoffner's former business partner, Darren Conrad, and is the Defendant in related litigation before the Court. *See Retail Service Systems, Inc. v. Carolina Bedding Direct, LLC, et al.*, No. 2:13-cv-994 (S.D. Ohio). Here, "MBA (FL) II" will be used to refer to the more recently registered company (also formerly known as Carolina Bedding Direct, LLC) and present Defendant.

2

preliminary injunction. (*Id.* ¶ 21–22.) Following trial, the Franklin County Court of Common Pleas granted PMD a fifteen-month permanent injunction (to run from January 26, 2009 to June 26, 2010) in addition to $140,000 in compensatory damages and $40,000 in punitive damages. (*Id.* ¶ 23.) According to plaintiff, the trial court found that "PMD's business materials and methodologies are trade secrets" and that Conrad violated the Uniform Trade Secrets Act by wrongfully using those trade secrets. (*Id.* citing Decision at 11; ECF No. 1-3.)

Upon issue of the permanent injunction, Conrad transferred all of his dealers with Carolina Bedding and Furniture, Inc. to other parties. (*Id.* ¶ 27.) During that time, defendant Shoffner was working as a sales representative at a mattress manufacturer named Park Place. (Pl.'s Mem. at 3; ECF No. 8.) Plaintiff alleges that Conrad entered into an arrangement with Shoffner in which Conrad would receive a portion of the mattress sales made to Conrad's former dealers. (*Id.*) Plaintiff alleges that Shoffner was aware of the court's injunction against Conrad and helped Conrad to violate the court's order through this scheme. (*Id.* at 4.) Defendants dispute this characterization and argue that Shoffner worked at Park Place as a Sales Representative where he was paid the standard sales commission. (Defs.' Reply at 4; ECF No. 15.)

In October 2011, Conrad created Carolina Bedding Direct, LLC in North Carolina. (Pl.'s Mem. at 4; ECF No. 8.) Defendant Shoffner invested seed money and additional capital into the company. (*Id.*) Plaintiff alleges that this new business again relied on the same marketing materials and techniques developed by PMD. (*See* Compl. ¶ 29; ECF No. 1*)* ("Using PMD's marketing, merchandising, sales, and management systems in this way, as well as continuing his supply relationship with defendant Shoffner, Conrad quickly grew his network to over 100 dealers.") Conrad then moved to Florida and "informally" transferred all of the assets of the North Carolina company to a newly formed Florida company by the same name, Carolina

3

Bedding Direct, LLC. (*Id.* ¶ 30–31.) As sole owner of both companies, Conrad transferred the company's assets—including dealers, employees, playbook, bank accounts, and federal Employer Identification Number—to the Florida entity and thereafter dissolved the North Carolina entity in April 2012. (*Id.* ¶ 31–32.) In November 2012, Conrad registered another Florida entity, Mattress By Appointment, LLC ("MBA (FL) I"), intending for it to replace Carolina Bedding Direct (FL), though no transfer ultimately occurred. (*Id.*) In March 2013, Shoffner purchased a 45% ownership interest in Carolina Bedding Direct (FL). (Pl.'s Mem. at 5; ECF No. 8.) Plaintiff alleges that "Shoffner knew that the company's business model was based on the system stolen from PMD, and Shoffner also knew of PMD's prior lawsuit against Conrad . . ." (*Id.*)

In February 2014, Conrad and Shoffner renamed Carolina Bedding Direct (Florida) as Mattress By Appointment (MBA (FL) II)—the second Florida entity by that name and present defendant in this action. (Compl. ¶ 37; ECF No. 1.) Conrad filed for personal bankruptcy in July 2014. (*Id.* ¶ 42.) Shoffner subsequently purchased Conrad's remaining 55% interest in MBA (FL) II, thereby giving him sole ownership. (*Id.* ¶ 43.) Around the same time, Shoffner formed MBA (SC) with the intent to ultimately relocate MBA (FL) II to South Carolina; however, no such transfer has occurred to date. (Defs.' Reply at 6; ECF No. 15.)

Just prior to these events, in October 2013 (by which time RSS had purchased the rights to PMD's marketing system), RSS brought suit against Carolina Bedding Direct (North Carolina) and MBA (FL) I in the Southern District of Ohio for the ongoing misappropriation of its trade secrets. (*Id.* ¶ 36.) *See Retail Service Systems, Inc. v. Carolina Bedding Direct, LLC, et al.*, No. 2:13-cv-994 (S.D. Ohio). After failing to timely answer, an entry of default was entered against defendants and default judgment as to Carolina Bedding Direct, LLC. (*See* 13-cv-994,

4

ECF Nos. 102, 112, 117.) The case has since been transferred to this Court. The present Defendants—MBA (FL) II, MBA (SC), and C. Edwin Shoffner—have sought to intervene and stay the proceedings of the related case pending resolution of this case. (*Id.* at ECF No. 140.)

On August 31, 2015 Plaintiff brought the instant action against MBA (FL) II, MBA (SC), and Shoffner for misappropriation of trade secrets as successors in interest. Defendants now move to dismiss for lack of personal jurisdiction. (Mot. to Dismiss at 1; ECF No. 4.)

## II.

Federal Rule of Civil Procedure 12(b)(2) provides for dismissal when a court lacks personal jurisdiction over a defendant. In considering a motion to dismiss for lack of personal jurisdiction, district courts have discretion to either decide the motion on the pleadings alone, permit discovery in aid of deciding the motion, or conduct an evidentiary hearing to resolve any apparent factual questions. *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991) (citing *Serras v. First Tenn. Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989)). Here, the record is sufficiently developed that the Court can decide Defendants' Motion to Dismiss without a hearing.

Plaintiff bears the burden of establishing personal jurisdiction. *Estate of Thomson v. Toyota Motor Corp. Worldwide*, 545 F.3d 357, 360 (6th Cir. 2008) (citing *Brunner v. Hampson*, 441 F.3d 457, 462 (6th Cir. 2006)). Where a Rule 12(b)(2) motion is decided solely on written submissions, the plaintiff's burden is "relatively slight"; the court must view all of the pleadings and affidavits in a light most favorable to the plaintiff, and to defeat dismissal, the plaintiff need only make a prima facie showing that personal jurisdiction exists. *Am. Greetings Corp. v. Cohn*, 839 F.2d 1164, 1169 (6th Cir. 1988); *Shaker Constr. Grp. LLC, v. Schilling*, No. 1:08-cv-278, 2008 WL 4346777, at *1 (S.D. Ohio Sept. 18, 2008). Indeed, as the Sixth Circuit has explained,

5

a court disposing of a 12(b)(2) motion "does not weigh the controverting assertions of the party seeking dismissal." *Theunissen*, 935 F.2d at 1459. The Sixth Circuit has adopted that approach "to prevent non-resident defendants from regularly avoiding personal jurisdiction simply by filing an affidavit denying all jurisdictional facts." *Id.*

Federal courts apply the law of the forum state when deciding whether personal jurisdiction exists over a defendant. *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996). Thus, to find that it has personal jurisdiction over Defendants, the Court must determine first whether Defendants' actions meet the criteria of Ohio's long-arm statute, O.R.C. § 2307.382, and second, that the Court's jurisdictional exercise comports with the due process requirements of the United States Constitution. *CompuServe, Inc.*, 89 F.3d at 1262. Here, the Court finds that both requirements are satisfied as to Defendants Mattress By Appointment, LLC (Florida) and C. Edwin Shoffner, but that the court lacks jurisdiction over defendant Mattress By Appointment, LLC (South Carolina) under the long-arm statute.

## III.

### A. Ohio's Long-Arm Statute

Ohio's long-arm statute allows Ohio courts to exercise personal jurisdiction over out-of-state defendants on claims arising from nine specific situations. O.R.C. § 2307.382(A). Plaintiff argues that the court has personal jurisdiction over Defendants under § 2307.382(A)(1)–(4) and (6), which provide that "[a] court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's:"

(1) Transacting any business in this state,
(2) Contracting to supply services or goods in this state,
(3) Causing tortious injury by an act or omission in this state,
(4) Causing tortious injury in this state by an act or omission outside this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state, . . . or

6

> (6) Causing tortious injury in this state to any person by an act outside this state committed with the purpose of injuring persons, when he might reasonably have expected that some person would be injured thereby in this state.

(Pl.'s Mem. in Opp. To Defs.' Mot. to Dismiss ("Pl.'s Mem") at 7; ECF No. 8.) A finding that Defendants have transacted business in Ohio or acted consistently with any one of the above factors would be sufficient to assert personal jurisdiction. *See Goldstein*, 638 N.E.2d at 543–45.

### 1. Mattress By Appointment, LLC (Florida) and C. Edwin Shoffner

Defendants argue that there is no evidence they "transacted any business" in Ohio. The Ohio Supreme Court has held that "transact" means "'to prosecute negotiations; to carry on business; to have dealings.'" *Ky. Oaks Mall Co. v. Mitchell's Formal Wear, Inc.*, 559 N.E.2d 477, 480 (Ohio 1990) (emphasis omitted) (quoting *Black's Law Dictionary* 1341 (5th ed. 1979)); *see also Goldstein v. Christiansen*, 638 N.E.2d 541, 544 (Ohio 1994). "Transact' is a "'broader term than the word "contract" and may involve business negotiations which have been either wholly or partly brought to a conclusion.'" *Burnshire Dev., LLC v. Cliffs Reduced Iron Corp.*, 198 F. App'x 425, 431 (6th Cir. 2006) (quoting *Ky. Oaks Mall Co.*, 559 N.E.2d at 480). However, a nonresident must do more than simply solicit business in Ohio; "a nonresident's ties must 'create a "substantial connection" with the [state].'" *U.S. Sprint Commc'ns Co. Ltd. P'ship v. Mr. K's Foods, Inc.*, 624 N.E.2d 1048, 1052 (Ohio 1994) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)).

Here, RSS has made a prima facie showing that defendants MBA (FL) II and Shoffner have transacted business in Ohio by listing its Ohio dealers on its public website, contracting with dealers to sell mattresses in Ohio, and actively advertising open sales positions in Ohio. (*See* Pl.'s Mem. at 13; ECF No. 8.) Through these activities, defendants have established a substantial connection to the state.

7

Plaintiff submits that Mattress By Appointment advertised four dealers in Ohio on its public website (www.mattressbyappointment.com) as of April 2014. (Pl.'s Mem. at 13, citing Scott Andrew Aff. at 3–4; ECF No. 8-6.) Defendants concede that at least three dealers operate in Ohio, though contend that they are merely independent mattress retail store owners and not defendants' employees. (Defs.' Reply at 18; ECF No. 15.) This argument is not persuasive however, given that to "transact" merely contemplates to "carry on business" or "have dealings with." It does not compel a strict employer–employee relationship.

Plaintiff next offers the deposition Nick Lyle, who was employed by Carolina Bedding Direct, the predecessor of MBA (FL) II. (*Id.*, citing Lyle Dep. at 28; ECF No. 8-5.) Lyle worked as a dealer, territory manager, and sales representative for the company from 2009 to 2012 in Cincinnati, Ohio. (Lyle Dep. at 28; ECF No. 8-5.) In these roles, Lyle used the company's "playbook," maintained a showroom, advertised, met with customers, and was compensated by Carolina Bedding Direct. (*Id.* at 28, 30–31.) Defendants argue that Lyle's professional titles were self-imposed and thereby do not convey substantive meaning. (Defs.' Reply at 13; ECF No. 15.) Whether or not Lyle's title was furnished by defendants or himself, Lyle held himself out to the public and to defendants as representing the company and therefore transacted business on its behalf.

In further support, plaintiff provides a copy of a contract made between defendant MBA (FL) II and another Ohio dealer, Michael Wolfe, entitled "Territory Agreement with Protective Covenants." (Wolfe Agreement; ECF No. 8-7.) The Agreement appoints Wolfe as a dealer for distribution of MBA's products and provides Wolfe with "access to MBA's intellectual property, including but not limited to its proprietary business methodology and specialized training also known as the 'Playbook,' . . ." (*Id.* at 1.) Defendants argue that the agreement is not "transacting

8

business" because provision 16 provides that it does not create any "form of legal association or arrangement that would impose liability upon one part for the acts or omission of the other party." (Defs.' Reply at 14, citing Wolfe Agreement at 5; ECF Nos. 15, 8-7.) However, an agreement to limit liability does not negate the existence of a business transaction. Here, Wolfe and MBA (FL) II signed a contract agreeing that Wolfe would act as a dealer and sell MBA's mattresses in Ohio. This is plainly transacting business.

Finally, plaintiff provides copies of two open sales positions posted by MBA on the social networking website LinkedIn—one for a Sales Territory Manager in Columbus, Ohio and another for a Territory Manager in Cincinnati, Ohio. (ECF Nos. 8-8, 8-9.) These actions indicate defendants' desire to further establish a permanent presence in Ohio extending beyond mere solicitation of business.

To satisfy Ohio's long-arm statute, defendants must not only have "transacted any business in the state," but there must also exist a sufficient nexus between Defendants' business dealings in Ohio and the matters at issue in this case. *ALTA Analytics, Inc. v. Muuss*, 75 F. Supp. 2d 773, 779 (S.D. Ohio 1999). Here, RSS claims that defendants continued to knowingly and intentionally misappropriate RSS's trade secrets from 2011 to the present. According to RSS, defendants are benefitting from the proprietary system originally developed by PMD (now owned by RSS), which involves "scripted, low-cost advertising techniques; . . . in-person merchandising and selling methodologies for selling mattresses and furniture by appointment," and "a step-by-step trackable management process for measuring and developing licensed and/or franchised dealers." (Compl. ¶ 1; ECF No. 1) RSS contends that defendants' business transactions in Ohio—advertising its Ohio dealers, training and maintaining Ohio dealers, and actively recruiting new Ohio representatives—all rely on the marketing materials and

9

management tools developed by PMD, and therefore a sufficient nexus exists between defendants' activities and the cause of action. Defendants argue that three Ohio dealers represent an "extremely small portion of the amount of dealers throughout the nation" and therefore do not establish a strong nexus. (Defs.' Reply at 14; ECF No. 15.) Three out of seventy-two dealers nationwide (according to defendants), though, does not seem insignificant either. (*See id.* at 16.) Given that RSS alleges its trade secrets were originally developed and stolen in Ohio and that RSS is based in Ohio and suffers harm there, defendants' Ohio activities appear to be sufficiently linked to the matter at hand.

Plaintiff further alleges that defendant Shoffner transacted business in Ohio and is liable under a veil-piercing theory. Piercing the corporate veil for purposes of maintaining personal jurisdiction "requires application of 'a less onerous standard' than that necessary for liability purposes." *Hitachi Med. Sys. Am., Inc. v. Branch*, No. 5:09-cv-01575, 2010 WL 816344, at *5 (Mar. 4, 2010 N.D. Ohio). In Ohio, to pierce the corporate veil and impose personal liability upon shareholders, it must be shown that: "(1) control over the corporation by those to be held liable was so complete that the corporation has no separate mind, will, or existence of its own, (2) control over the corporation by those to be held liable was exercised in such a manner as to commit fraud or an illegal act against the person seeking to disregard the corporate entity, and (3) injury or unjust loss resulted to the plaintiff from such control and wrong." *Belvedere Condominium Unit Owners' Assn. v. R.E. Roark Cos. Inc.*, 67 Ohio St. 3d 274, 287 (1993).

Here, viewed in a light most favorable to the plaintiff, RSS has made a prima facie showing of personal jurisdiction over Shoffner. First, RSS has alleged that as sole owner and operator of MBA (FL) II, Shoffner has complete control over MBA (FL) II such that the entity has no separate mind, will, or existence of its own. (Pl.'s Mem. at 12–13; ECF No. 8.) Shoffner

10

personally trains and recruits dealers for MBA in Ohio. (*Id.* at. 14.) According to Scott Andrew, President of RSS, Shoffner "undoubtedly engages in various interactions" with its Ohio dealers, including providing training materials, processing regular orders, and weekly phone calls. (*Id.* at 13–14, citing Andrew Aff.; ECF No. 8-6.) Second, RSS contends that Shoffner knew about the injunction against Conrad when he joined Carolina Bedding Direct (now MBA (FL) II) and has continued to misappropriate RSS's trade secrets as the sole owner of MBA (FL) II. (Compl. ¶ 61–63; ECF No. 1.) Finally, RSS alleges that defendants have harmed RSS by "improperly disseminating of RSS's trade secrets and management methodologies." (*Id.* ¶ 5.) Taking RSS's allegations as true, RSS has pled sufficient facts to establish personal jurisdiction over defendant Shoffner.

Through its activities in Ohio, MBA (FL) II and Shoffner have established a substantial connection to the state. Defendants have contracted with at least three or four individuals in Ohio to serve as dealers of its products, advertised its Ohio locations on its website, and posted employment opportunities in Ohio on a public social networking website. Viewed in the light most favorable to RSS, the Complaint and affidavits amount to a prima facie showing that defendants MBA (FL) II and Shoffner have transacted business in Ohio.

### 2. Mattress By Appointment, LLC (South Carolina)

Plaintiff has not alleged sufficient facts to make a prima facie showing of personal jurisdiction over MBA (SC) under Ohio's long-arm statute. Defendants maintain that "MBA (SC) conducts no business, whatsoever, in any state, as it is a non-operational limited liability company." (Mot. to Dismiss at 6; ECF No. 4.) In response, plaintiff offers a copy of a draft employment agreement between MBA (SC) and Kyle Sherratt. (Sherratt Aff.; ECF No. 8-10.) Sherratt states that he was employed by MBA (FL) II and "received an employment agreement . .

11

. from Edwin Shoffner related to a prospective employment relationship with Mattress By Appointment, LLC, a South Carolina limited liability company." (*Id.*) However, the agreement is not signed and Sherratt did not indicate that any agreement was actually reached. (Defs.' Reply at 6; ECF No. 15.) Thus, the agreement is only evidence of negotiations between the parties. "Transacting business" does contemplate "business negotiations" that have been "partly brought to a conclusion." *See Burnshire Dev., LLC v. Cliffs Reduced Iron Corp.*, 198 F. App'x 425, 431 (6th Cir. 2006) However, the negotiations here do not seem to involve Ohio in any way. The address listed for Sherratt in the agreement is located in Massachusetts. (Agreement at 7; ECF No. 8-10.) Nowhere else in the agreement is Ohio mentioned. Although Shoffner admits that he intended to transfer the business of MBA (FL) II to MBA (SC) when he formed it, no such transfer has occurred yet. (Defs.' Reply at 6; ECF No. 15.) Plaintiff has not put forth any information to contradict this claim. The draft agreement with Shoffner is the only evidence of MBA (SC) operating anywhere. Without more, plaintiff has not pled sufficient facts showing that MBA (SC) transacted business in Ohio or is subject to personal jurisdiction under another long-arm provision. Plaintiff has not made a prima facie showing of personal jurisdiction under Ohio's long-arm statute as to defendant MBA (SC), and therefore the court may not exercise personal jurisdiction over it.

**B.     Due Process**

Given that the Court can exercise personal jurisdiction over Defendants MBA (FL) II and Shoffner under Ohio's long-arm statute, the Court must now determine whether exercising personal jurisdiction over the two defendants comports with constitutional due process requirements. Courts in the Sixth Circuit make this determination using the three-part test set forth in *Southern Machine Company v. Mohasco Industries, Inc.*, 401 F.2d 374, 381 (6th Cir.

12

1968). *See Nationwide Mut. Ins. Co. v. Tryg Int'l Ins. Co.*, 91 F.3d 790, 793 (6th Cir. 1996). "First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state." *S. Mach. Co.*, 401 F.2d at 381. "Second, the cause of action must arise from the defendant's activities there." *Id.* And third, "the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable." *Id.*

### 1. Purposeful Availment

The purposeful availment requirement provides some degree of predictability to out-of-state residents so that they can structure their conduct with some assurance as to where their conduct will and will not render them liable to suit. *Worldwide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). This requirement protects out-of-state residents from being haled into a jurisdiction based only upon "'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or a third person.'" *Burger King*, 471 U.S. at 475 (internal citations omitted) (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984); *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984); *Worldwide Volkswagen Corp.*, 44 U.S. at 299). Accordingly, "where the defendant 'deliberately' has engaged in significant activities within a State, or has created 'continuing obligations' between [itself] and residents of the forum, [it] manifestly has availed [itself] of the privilege of conducting business there." *Id.* at 475–76 (internal citations omitted) (quoting *Keeton*, 465 U.S. at 781; *Travelers Health Ass'n v. Virginia (ex rel State Corp. Comm'n)*, 339 U.S. 643, 648 (1950)). The Ohio long-arm statute's "'transacting any business' standard is coextensive with the purposeful availment prong of constitutional analysis." *Burnshire Dev.*, 198 F. App'x at 432.

Given that MBA (FL) II and Shoffner have transacted business within the meaning of the

13

Ohio long-arm statute, they have also purposefully availed themselves of the privilege of acting in Ohio. MBA (FL) II advertised four Ohio dealers on its public website in 2014. (Pl.'s Mem. at 13, citing Scott Andrew Aff. at 3–4; ECF No. 8-6.) Carolina Bedding Direct (now MBA (FL) II) employed Nick Lyle from 2009 to 2012 in Cincinnati as a dealer, territory manager, and sales representative. (Lyle Dep. at 28, 30–31; ECF No. 8-5.) Defendants contracted with Michael Wolfe to serve as a dealer in Ohio, giving him access to the company's specialized training and business methodologies. (Wolfe Agreement; ECF No. 8-7.) Finally, defendants advertised open manager positions in Ohio on the social networking website LinkedIn. (ECF Nos. 8-8, 8-9.) These actions demonstrate that defendants created continuing obligations in Ohio and thereby manifestly availed themselves of the privilege of conducting business in the state.

Defendants challenge the credibility of RSS's allegations in the pleadings and affidavits. (Defs.' Reply at 16–17; ECF No. 15) ("There is absolutely no reliable evidence of that any these allegations are accurate.") In considering a 12(b)(2) motion, the court is not required to "weigh the controverting assertions of the party seeking dismissal." *Theunissen*, 935 F.2d at 1459. The plaintiff need only make a prima facie showing that personal jurisdiction exists. *Am. Greetings Corp. v. Cohn*, 839 F.2d 1164, 1169 (6th Cir. 1988); *Shaker Constr. Grp. LLC, v. Schilling*, No. 1:08-cv-278, 2008 WL 4346777, at *1 (S.D. Ohio Sept. 18, 2008). Plaintiff here has alleged sufficient facts showing that defendants have purposefully availed themselves of the privilege of acting in Ohio.

2. **Connection to the Causes of Action**

Under the second *Southern Machine* requirement, a plaintiff's "cause of action must arise from the defendant's activities there." 401 F.2d at 381. However, as the Sixth Circuit explained in *Southern Machine*, "the second criterion does not require that the cause of action formally

14

'arise from' defendant's contacts with the forum; rather, this criterion requires only 'that the cause of action, of whatever type, *have a substantial connection with* the defendant's in-state activities.'" *Third Nat'l Bank v. WEDGE Grp., Inc.*, 882 F.2d 1087, 1091 (6th Cir. 1989) (quoting *S. Mach. Co.*, 401 F.2d at 384 n.27). "Only when the operative facts of the controversy are not related to the defendant's contact with the state can it be said that the cause of action does not arise from that [contact]." *S. Mach. Co.*, 401 F.2d at 384 n.29.

Here, the cause of action against defendants is sufficiently connected to its in-state activities. RSS alleges that Shoffner's former business associate stole trade secret information from PMD while in Ohio and used the information to form a competing company. (Compl. ¶ 1; ECF No. 1.) Plaintiff alleges that Shoffner is now the sole owner of that competing business (after various changes in name and formation) and continues to improperly use plaintiff's trade secrets to conduct its business, including business in Ohio. For instance, plaintiffs allege that the "playbook" that Nick Lyle received from the company and that the contract with Michael Wolfe refers to is the very same "playbook" originally developed by PMD. (Lyle Dep. at 28; ECF No. 8-5; Wolfe Agreement at 1; ECF No. 8-7.) Though questionably broad, it is the precise manner in which defendants conduct their business that plaintiff alleges is at issue. As defendants have developed and trained its business contacts in Ohio by allegedly using those methods, the matter at issue is sufficiently connected to defendants' in-state activities.

Additionally, the same in-state activities alleged here are also at issue in the related litigation before the court. *See Retail Service Systems, Inc. v. Carolina Bedding Direct, LLC, et al.*, No. 2:13-cv-994 (S.D. Ohio); (*see also* Related Case Memorandum; 2:13-cv-994, ECF No. 128.) In that case, RSS brought suit against Carolina Bedding Direct (North Carolina) and MBA (FL) I for the same misappropriation of its trade secrets. Personal jurisdiction was not challenged. Central to RSS's theory of liability is that each variation of "Carolina Bedding Direct" or "Mattress By

15

Appointment" is, in actuality, the same company. To some extent this theory is supported by Mattress By Appointment itself, whose website traces the company's history back to 2003 as Carolina Bedding and Furniture, through each form of Carolina Bedding Direct from 2009–2013, and finally to Mattress By Appointment in 2014. ("Our History," Mattress By Appointment; ECF No. 8-3.) Moreover, the present defendants MBA (FL) II, MBA (SC), and Shoffner have sought to intervene and stay the proceedings of the related litigation pending resolution of this case, an indication of the relatedness of the two cases. (Mot. to Intervene and Stay; 2:13-cv-994, ECF No. 140.) The closeness of connection of this case with the related litigation over which the court already retains jurisdiction further supports the connection of defendants' activities with the cause of action. The second *Southern Machine* requirement is satisfied.

### 3. Reasonableness

A defendant's actions, or the consequences caused by a defendant's actions, "must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable." *S. Mach. Co.*, 401 F.2d at 381. This final criterion of the *Southern Machine* test "looks to the extent of the forum state's interest and whether exertion of jurisdiction over the particular defendant is fair." *First Nat'l Bank v. J.W. Brewer Tire Co.*, 680 F.2d 1123, 1126 (6th Cir. 1982). "When the first two elements [of the *Southern Machine* test] are met, an inference arises that the third, fairness, is also present; only the unusual case will not meet this third criterion." *Id.* When considering whether it is reasonable to exercise personal jurisdiction over a non-resident defendant, courts typically consider "(1) the burden on the defendant; (2) the interest of the forum state; (3) the plaintiff's interest in obtaining relief; and (4) other states' interest in securing the most efficient resolution of the controversy." *Intera Corp. v. Henderson*, 428 F.3d 605, 618 (6th Cir. 2005).

The four factors outlined above demonstrate that the court's exercise of personal

jurisdiction over defendants MBA (FL) II and Shoffner is reasonable. MBA (FL) II, a Florida company operating nationwide, and Shoffner, a citizen of South Carolina, would be burdened by defending a lawsuit in Ohio. The Sixth Circuit, however, has "deemed specific jurisdiction to be proper even when a defendant would be compelled to travel." *Intera Corp.*, 428 F.3d at 618. Defendants' predecessor companies have already "retained counsel and vigorously defended" the related litigation before this court. (Pl.'s Mem. at 17; ECF No. 8.) Although "the fact that two different defendants chose to retain counsel and defend their interests in another case is not dispositive," it does weaken the argument that it is an undue burden. (Defs.' Reply at 18; ECF No.15.) Ohio has a strong interest in safeguarding RSS's legal options over the misappropriation of an Ohio corporation's trade secrets given that the trade secrets were allegedly developed an stolen in Ohio and continue to be misappropriated in Ohio. RSS has a substantial interest in obtaining relief for the purported misappropriation of its trade secrets.

Defendants contend that two state cases currently pending in South Carolina and Florida would more efficiently resolve the controversy and ask the court to combine this case with them. (Mot. to Dismiss at 14–15; *see also Mattress By Appointment, LLC v. Scott Anderson, et al.*, No. 16-2015-ca-1510 (Fla. Cir. Ct.) and *Mattress By Appointment, LLC v. Retail Service Systems, Inc., et al.*, No. 2015cp0402161 (S.C. Ct. Com. Pl.).) A district court may combine similar matters "when actions involving nearly identical parties and issues have been filed in two different district courts," in which case the first suit filed will proceed. *Wynne v. Commemorative Air Force*, No. 3:06-CV-122, 2006 WL 2486562, at *2 (S.D. Ohio Aug. 28, 2006) (citing *Zide Sport Shop of Ohio, Inc. v. Ed Tobergate Associates, Inc.*, 16 Fed. App'x 433, 437 (6th Cir. 2001)). However, "the first-to-file rule is inapplicable where the prior-filed similar action was filed in state court, not federal court." *Ride, Inc. v. Bowshier*, No. 3:12-CV-271, 2013 WL

1327133, at *3 (S.D. Ohio Mar. 29, 2013). Here, the other cases are state cases, not federal. Moreover, the two suits in this court were filed before the Florida and South Carolina state suits and RSS is not a party to the Florida suit. (Pl.'s Mem. at 19; ECF No. 8.) Although Florida and/or South Carolina might also have an interest in securing an efficient resolution of the controversy, Ohio's interest is likewise strong given the parties' connection to the state.

Exercising personal jurisdiction over Defendants MBA (FL) II and Shoffner comports with constitutional due process requirements.

### III.

Defendant MBA (FL) II also claims that service was not properly made on its registered agent, "Eraclides Gelman, 4811 Atlantic Boulevard, Jacksonville, Florida 32207." Eraclides Gelman is a law firm. Patrick Hackett, a process server with Don Taylor Enterprises, Inc., affirms that he attempted service at the law firm and was told that the firm's practice is to assign an individual attorney when the firm is named as the registered agent for a company. (Hackett Aff. ¶ 4; ECF No.8-13.) The firm informed Mr. Hackett that Matthew Whiddon was the assigned attorney to receive process for MBA (FL) II. However, Mr. Whiddon was no longer with the firm and that the firm was no longer the registered agent for MBA (FL) II. (*Id.*) Thereafter, Don Taylor contacted Mr. Whiddon who confirmed that he was the registered agent for MBA (FL) II and agreed to accept service on its behalf. (Taylor Aff. ¶ 5; ECF No. 8-13.) Raymond Udall, another process server with Don Taylor Enterprises, ultimately served Mr. Whiddon with the summons and complaint, which Mr. Whiddon accepted on behalf of MBA (FL) II. (Udall Aff. ¶ 4; ECF No. 8-13.) Whiddon now states that he was never the agent for MBA (FL) II and that the agent on file remains Eraclides Gelman. (Whiddon Aff.; ECF No. 4-3.) Plaintiff insists that "[a] corporation should not be allowed to evade service of process by simply failing to file its agent's

new address." *Baker v. Tom Joseph Enterprises, Inc.*, No. 6197, 1983 WL 5667, at *1 (Ohio Ct. App. Dec. 27, 1983). Regardless of the true agent, defendants do not allege that actual notice to MBA (FL) II was deficient. Plaintiff's affidavits establish that its efforts to effect service were sufficient. Because Mr. Whiddon did in fact accept service on behalf of MBA (FL) II, and because defendants do not claim lack of actual notice, service was proper.

## IV.

For the reasons stated above, Defendants' Motion to Dismiss for lack of personal jurisdiction (ECF No. 4) is **DENIED** as to Defendants Mattress By Appointment (Florida) and C. Edwin Shoffner, and **GRANTED** as to Defendant Mattress By Appointment (South Carolina).

**IT IS SO ORDERED.**

9-28-2016
**DATE**

**EDMUND A. SARGUS, JR.**
**CHIEF UNITED STATES DISTRICT JUDGE**